[No. A093437. First Dist., Div. Three. Dec. 27, 2002.]

NGOC TRAN, Plaintiff and Appellant, v.
FARMERS GROUP, INC., et al., Defendants and Respondents.

1204

## COUNSEL

Michael J. Kinane for Plaintiff and Appellant.

Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Rachael A. Campbell for Defendants and Respondents.

## OPINION

**PARRILLI, J.**—This case involves the fiduciary and contractual duties owed to an insured by a reciprocal insurer's attorney-in-fact. The attorney-in-fact acts as the insurer's managerial agent, deriving its authority from a power of attorney executed by the insured. (Ins. Code, § 1305; *Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694, 704 [57 Cal.Rptr.2d 798].) We hold that the attorney-in-fact owes the insured a limited fiduciary duty under the power of attorney. We also hold that the attorney-in-fact may be liable for breach of the covenant of good faith and fair dealing implied in the insurance contract, if the insured can establish the conditions for application of the "alter ego" or "single enterprise" doctrine.

Ngoc Tran appeals from an order sustaining a demurrer without leave to amend and an order granting summary adjudication, which together disposed of all her causes of action against respondents Farmers Group, Inc., Truck Underwriters Association, and Fire Insurance Exchange. A final judgment was entered after the notice of appeal was filed. We shall treat the notice of appeal as filed after the entry of judgment. (*Lee Newman, M.D., Inc. v. Wells Fargo Bank* (2001) 87 Cal.App.4th 73, 78 [104 Cal.Rptr.2d 310].)[1]

Respondents accurately point out that Tran's briefing is defective in many respects. We ignore Tran's statement of facts, which is devoid of record

---

[1]Tran also purports to appeal from an order granting summary adjudication to defendants Farmers Insurance Exchange and Truck Insurance Exchange. However, there are still causes of action pending against these defendants. Therefore, there is no final judgment and Tran may not yet pursue an appeal against Farmers Insurance Exchange or Truck Insurance Exchange. (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1526 [80 Cal.Rptr.2d 94]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 2:241.1.)

references. There are, however, sufficient citations to the record in the body of Tran's argument to allow us to assess the merits of the appeal.[2] We reverse the judgment, and direct the trial court to overrule the demurrer and deny the motion for summary adjudication as to Farmers Group and Truck Underwriters Association.

## BACKGROUND

Farmers Insurance Exchange, Truck Insurance Exchange, and Fire Insurance Exchange are reciprocal insurers operating within the Farmers Insurance Group. (See, e.g., *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1470 [258 Cal.Rptr. 907]; *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 823 [105 Cal.Rptr.2d 59].) While the record is not entirely clear on this point, Farmers Group is attorney-in-fact for at least some of the Farmers Group exchanges. Truck Underwriters Association is attorney-in-fact for Truck Insurance Exchange.[3]

Tran's first and second amended complaints included causes of action for breach of the covenant of good faith and fair dealing; breach of fiduciary duty; fraud; conspiracy to defraud; and intentional infliction of emotional distress. She alleged the following facts: All the insurance company defendants share the same general management, accounting system, trademarks, and advertising. On December 4, 1996, Farmers Insurance Group agent David Song sold Tran a new commercial insurance policy for her grocery store. Tran increased her coverage from the level in her original policy from Farmers Insurance Exchange, which was issued in November 1995. She signed a loan agreement for an annual premium of $13,505, and paid $2,264.80 for the first two months' installments. Tran did not receive a copy of her policy, and relied on Song's representations that the substantially increased premiums would provide adequate coverage for her business. On December 5, 1996, Tran's store was fire-bombed by an arsonist and nearly burned to the ground. Three other grocery stores in the neighborhood suffered similar attacks.

Tran was unable to get a copy of her policy from defendants after the fire, and the processing of her claim was delayed. On January 30, 1997, defendants produced a Truck Insurance Exchange policy made out to Tran, in

[2]Tran filed a request for judicial notice together with her reply brief. This request is denied, as it is both belated and seeks notice of documents that were not before the trial court.

[3]According to a Securities and Exchange Commission filing presented below by Tran, Farmers Group operates as the attorney-in-fact for all three Farmers Group exchanges. Truck Underwriters Association, however, identifies itself in respondents' briefing as the attorney-in-fact for Truck Insurance Exchange. At this early stage of Tran's action, this factual conflict is only significant insofar as it presents a triable issue regarding Truck Underwriters Association's liability.

which they retroactively altered her premium to $9,279 annually, which reduced Tran's coverage by over $400,000. The fire cost Tran over $1 million in lost business and property damage. By reducing her coverage after the fire, defendants lowered Tran's coverage to less than half of her actual losses. Furthermore, defendants deducted from Tran's property coverage expenses for asbestos cleanup services that were neither authorized nor justified.

Farmers Group, Truck Underwriters Association, and Fire Insurance Exchange demurred to the cause of action in the first amended complaint for breach of fiduciary duty. The trial court sustained the demurrer without leave to amend. The same defendants moved for summary adjudication of the remaining causes of action in the second amended complaint, contending that because they issued no policies to Tran and did not participate in the adjustment or handling of her claim, they could not be held liable. They relied on declarations by employees of Truck Insurance Exchange and Farmers Insurance Exchange to support these factual claims.

Tran's response to the summary adjudication motion was unintelligible. The court gave her counsel another month to clarify his statement of facts and memorandum of points and authorities. Tran's amended response was somewhat more focused. She presented a Securities and Exchange Commission (SEC) filing explaining the relationship between Farmers Group and the three insurance exchange defendants, referred to as the P&C Group. This filing states that the P&C Group insurers are owned by their policyholders, not by Farmers Group. The policyholders appoint Farmers Group as their exclusive attorney-in-fact to provide management services. "As manager of the P&C Group, the Company selects risks, issues policies, prepares and mails invoices, collects premiums, manages the investment portfolios and performs certain other administrative functions. The insurers of the P&C Group are responsible for the claims functions, including the settlement and payment of claims and claims adjustment expenses. They are also responsible for the payment of commissions, benefits for agents and district managers, and their respective premium and income taxes."

Tran also provided an installment policy payment agreement dated December 4, 1996, showing total premiums of $13,505; a declarations page from a Farmer's Insurance Exchange policy No. 60164-47-70 in her name for the period from December 4, 1996, to December 4, 1997, showing limits of $200,000 for personal property and $60,000 for lost business income, with a corresponding invoice for a premium of $3,974; a Truck Insurance Exchange policy with the same number, for the same period, showing limits of $300,000 for personal property and $60,000 for lost business income,

with a total premium of $9,279; and another Truck Insurance Exchange policy with the same number, for the same period, showing limits of $400,000 for personal property and $60,000 for business income, with an invoice dated April 3, 1997, reflecting a change in coverage but no total premium amount.

Tran presented deposition excerpts from various Farmers employees. Jeffrey Abston identified himself as an employee of Farmers Insurance Exchange, but explained that he investigated claims on behalf of both Farmers Insurance Exchange and Truck Insurance Exchange. He investigated Tran's claim, and concluded she had nothing to do with the arson. Abston had signed a letter regarding Tran's coverage in his capacity as claims representative for Truck Insurance Exchange, although the letter referred to a Farmers Insurance Exchange policy issued to Tran in December 1996. Abston could only explain this discrepancy by saying he may have made a mistake.

Michelle Mason was a commercial service representative for Farmers Insurance Group in 1996. She testified that she had reinstated Tran's account on December 4, 1996, after speaking with agent David Song. She authorized Song to reinstate the account, and he set it up for a premium of $13,505. Song's normal procedure after receiving a check from an insured would have been to deposit it into a general Farmers account, which Farmers Group would "sweep," taking the money and applying it "to where it belongs." The underwriting department of Farmers Insurance Group made the decision whether a policy was issued by Farmers Insurance Exchange or Truck Insurance Exchange.

Sharon Larsen, a commercial service team manager employed by Farmers Group, testified that she understood neither Farmers Insurance Exchange nor Truck Insurance Exchange had any employees of their own. Larsen identified Truck Underwriters Association as "the management company for the exchanges," though to her knowledge it also had no employees of its own. Employees of Farmers Group would issue policies on behalf of the exchanges, acting as the exchanges' representatives, and following guidelines provided by the exchanges. However, Larsen acknowledged that all the guidelines were generated by the home office of Farmers Group. An analyst or underwriter on Larsen's team would decide whether to insure a particular person or business, and which exchange would issue the policy. The agent would initially bind the insured to certain policy limits, then the analyst or underwriter would verify that the limits were available and acceptable. Both the underwriter and the agent had a responsibility to make sure the policyholder was carrying adequate insurance.

Larsen could not explain why her group's computer generated policies for Tran from both Farmers Insurance Exchange and Truck Insurance Exchange for the same period; she had never seen that happen before. She testified that David Song was an agent authorized to represent all the Farmers insurance companies.

In her points and authorities, Tran argued the defendants were so inter-related that they all shared liability. She claimed all defendants owed her a fiduciary duty and a duty of good faith and fair dealing. She also relied on the fiduciary duty imposed by Insurance Code section 1733,[4] which provides that funds received by an insurance agent as premium for a policy are held in a fiduciary capacity.

The court granted the summary adjudication motion in its entirety. It ruled that the cause of action for breach of the covenant of good faith and fair dealing failed as a matter of law because there was no contract between Tran and the moving defendants. The court also found no merit in the fraud, conspiracy to defraud, and intentional infliction of emotional distress causes of action, because any acts by Farmers Group employees were conducted in their capacity as agents for the exchanges.

## DISCUSSION

### 1. The Nature of Reciprocal Insurers

Before reaching the merits, we briefly review the basic organizational aspects of reciprocal insurers, also known as interinsurance exchanges, which are governed by section 1280 et seq. An interinsurance exchange is an unincorporated business organization made up of subscribers and managed by an attorney-in-fact. The exchange is the insurer and the subscribers are the insureds. The subscribers execute powers of attorney appointing the attorney-in-fact to act on their behalf. The attorney-in-fact executes the exchange's insurance contracts. (§§ 1303, 1305; *Lee v. Interinsurance Exchange, supra,* 50 Cal.App.4th at pp. 702-704; *Industrial Indem. Co. v. Golden State Co.* (1953) 117 Cal.App.2d 519, 522-523 [256 P.2d 677].)

The subscribers may provide for the exercise of their rights by a board composed of subscribers or their agents. (§§ 1307, 1308; *Lee v. Interinsurance Exchange, supra,* 50 Cal.App.4th at p. 704.) "Courts which have considered the relationship between a reciprocal insurer's board, its attorney-in-fact and its subscribers have concluded the relationship is analogous to the relationship between the directors, management and participants in other

---

[4]Further statutory references are to the Insurance Code.

kinds of organizations. For example, at least one court has held that '[t]he position of the attorney-in-fact of a reciprocal insurance exchange, who manages the business of the exchange under powers of attorney of the subscribers . . . is fiduciary in character *to the same extent as that of the management of an incorporated mutual insurance company . . . .' (Industrial Indem. Co. v. Golden State Co.* [, *supra,*] 117 Cal.App.2d 519, 533, italics added.) Another court has observed that a reciprocal insurer's 'basic differences from [a mutual insurance company] are in mechanics of operation and in legal theory, rather than in substance.' (*Cal. State Auto. etc. Bureau v. Downey* (1950) 96 Cal.App.2d 876, 880 [216 P.2d 882].)" (*Lee v. Interinsurance Exchange, supra,* 50 Cal.App.4th at pp. 712-713, italics in original.)

The *Lee* court rejected the argument that the fiduciary duties owed to subscribers by the boards and attorneys-in-fact of reciprocal insurers preclude application of the business judgment rule. This rule protects the good faith business decisions of a business owner's management from judicial interference. The court noted the business judgment rule has been applied to limited partnerships, corporations, and mutual insurance companies, even though the managements of these forms of business are deemed to be agents and fiduciaries of limited partners, shareholders, and members. (*Lee v. Interinsurance Exchange, supra,* 50 Cal.App.4th at pp. 711-712.)

2. *The Demurrer*

Respondents prevailed on their demurrer to Tran's cause of action for breach of fiduciary duty. ■ A demurrer admits all properly pleaded material facts. If those facts support a cause of action under any valid theory, the complaint survives the demurrer. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 [104 Cal.Rptr.2d 239].) We review the sufficiency of the complaint de novo. (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800-801 [107 Cal.Rptr.2d 710].)

■ Tran raises a number of different bases for assigning fiduciary responsibilities to respondents. She claims the California Supreme Court has recognized the fiduciary duty owed by insurers to their insureds. Respondents were not Tran's insurers, but we address this claim because Tran's complaint includes allegations sufficient to state a claim that all defendants operated as a single enterprise. (See *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250 [1 Cal.Rptr.2d 301], discussed in pt. 3, *post.*) Respondents correctly note that California courts have refrained from characterizing the insurer-insured relationship as a fiduciary one.

Tran relies on dicta in *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141], and *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 215 [228 Cal.Rptr. 160, 721 P.2d 41]. ▮ Recently, however, our Supreme Court declared: "The insurer-insured relationship . . . is not a true 'fiduciary relationship' in the same sense as the relationship between trustee and beneficiary, or attorney and client. [Citation.] It is, rather, a relationship often characterized by unequal bargaining power [citation] in which the insured must depend on the good faith and performance of the insurer [citations]. This characteristic has led the courts to impose 'special and heightened' duties, but '[w]hile these "special" duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, *not* because the insurer *is* a fiduciary.' [Citations.]" (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1150-1151 [113 Cal.Rptr.2d 70, 33 P.3d 487], italics in original; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 11:146 et seq.)

▮ We agree with the authorities suggesting that an insurer's breach of its "fiduciary-like duties" is adequately redressed by a claim for breach of the covenant of good faith and fair dealing implied in the insurance contract. (*Gibson v. Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 449-450 [208 Cal.Rptr. 511]; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147 [271 Cal.Rptr. 246]; *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1096 [9 Cal.Rptr.2d 469]; Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 11:154 to 11:155.)

Tran also cites section 1733, which states: "All funds received by any person acting as insurance agent, broker, or solicitor . . . as premium . . . on or under any policy of insurance . . . are received and held by that person in his or her fiduciary capacity. Any such person who diverts or appropriates those fiduciary funds to his or her own use is guilty of theft and punishable for theft as provided by law." Tran's complaint includes allegations that respondents Farmers Group and Truck Underwriters Association, in their capacity as attorneys-in-fact for the exchange defendants, diverted some of her premium funds and issued her coverage in an amount less than she purchased from agent David Song.

However, even if we assume that the attorney-in-fact of a reciprocal insurer qualifies as an "insurance agent" (see § 31), section 1500 declares that Insurance Code provisions "regarding the appointment, licensing, qualification and regulation of insurance agents, brokers and solicitors, apply

neither to the attorney-in-fact of a reciprocal or interinsurance exchange, nor to the salaried representatives of such exchange or attorney who receive no commissions, but do apply in the case of any agent, broker or solicitor of any reciprocal or interinsurance exchange who receives any commission." Tran contends the attorney-in-fact receives a "commission" in the form of a percentage of the exchange's gross premiums. We think it is clear the statute contemplates commissions earned as personal income, not the fees charged by a corporate attorney-in-fact. Section 1500 precludes the imposition of a fiduciary duty on respondents under section 1733.

Tran identifies a third source of fiduciary obligation, however, that withstands scrutiny. Farmers Group or Truck Underwriters Association, or perhaps both, are her attorney-in-fact, and as such owe her a fiduciary duty in regard to the insurance contract or contracts they executed on her behalf. (§ 1305; *Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 655-666 [155 Cal.Rptr. 843] (*Delos*).) In *Delos*, the court noted that both Farmers Group and Farmers Insurance Exchange had conceded their fiduciary duties by failing to respond to requests for admissions. However, the court also declared that Farmers Group, as attorney-in-fact for the plaintiffs, "owed them a fiduciary duty in reference to insurance matters involving the Exchange." (*Delos*, at p. 655.) Respondents contend *Delos* is no longer good law. But the arguments and authority marshalled by respondents do not pertain to *Delos*'s reasoning on Farmers Group's fiduciary duty as attorney-in-fact. They pertain to the holding on the Group's liability for breach of the implied covenant of good faith and fair dealing, which we discuss in part 3, *post*.

We believe respondents, having chosen to conduct their insurance business through interinsurance exchanges that require the appointment of attorneys-in-fact to execute contracts on behalf of subscriber/insureds, are bound by the ordinary rule that an attorney-in-fact is an agent owing a fiduciary duty to the principal. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, §§ 41, 80, pp. 53-54, 82; *Delos, supra*, 93 Cal.App.3d at pp. 655-656.)

Respondents contend their fiduciary duty runs not to individual subscribers, but to the exchange as a collective whole. Section 1305, however, clearly states that when the attorney-in-fact executes contracts, it is "acting for [the] subscribers under powers of attorney."[5] Nor does the authority cited by respondents support their position. In *Lee v. Interinsurance Exchange*,

---

[5] In a petition for rehearing, respondents insist the attorney-in-fact executes contracts on behalf of subscribers in the subscribers' capacity as insurers, not insureds. However, California law has long since abandoned the notion that subscribers act as both insurers and insureds.

*supra*, 50 Cal.App.4th at page 712, and *Industrial Indem. Co. v. Golden State Co., supra*, 117 Cal.App.2d at page 533, the courts held that the attorneys-in-fact of a reciprocal exchange owe fiduciary duties to the subscribers analogous to the duties owed to shareholders by corporate management. Respondents' claim that the trustee of a trust owes a fiduciary duty to the trust itself but not to the beneficiaries is absurd. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, §§ 67-68, pp. 950-952.) The business decisions made by the attorney-in-fact on behalf of the exchange are protected by the business judgment rule, but this does not absolve them of fiduciary responsibility to individual subscribers. (*Lee v. Interinsurance Exchange, supra*, 50 Cal.App.4th at pp. 712-713.)

Respondents are on firmer ground when they argue that assigning fiduciary responsibilities to them would be inconsistent with the rule that the insurer-insured relationship is not a true fiduciary relationship. (*Vu v. Prudential Property & Casualty Ins. Co., supra*, 26 Cal.4th at pp. 1150-1151.) There is some tension between this argument and respondents' strenuous claim they are *not* insurers for purposes of liability for breach of the implied covenant of good faith and fair dealing. However, in light of the practical reality that attorneys-in-fact function as the management of reciprocal insurers (*Lee v. Interinsurance Exchange, supra*, 50 Cal.App.4th at p. 712), we agree with respondents that the fiduciary duties flowing from their status should not be significantly disproportionate to the obligations owed by the management of other kinds of insurance organizations.

Appropriate guidelines for the scope of respondents' fiduciary duty can be drawn from the law governing powers of attorney and from the law of insurance. ■ The scope of a power of attorney depends on the language of the instrument, which is strictly construed. (2 Witkin, Summary of Cal. Law, *supra*, Agency and Employment, § 81, pp. 82-83.) ■ The record in this case does not include the power of attorney executed by Tran. However, by statute the instrument must include the authority to execute the insurance contract on Tran's behalf. (§ 1305.) Tran has alleged that respondents mishandled the execution of her contract by issuing her less coverage than she requested. The evidence developed in the summary adjudication proceedings indicates that respondents issued no fewer than three policies to Tran after the fire, with differing terms. Clearly, these allegations and potential amended claims directly implicate respondents' fiduciary duties regarding the execution of the insurance contract.

---

Section 1303 states the exchange "shall be deemed the insurer while each subscriber shall be deemed an insured." (See *Lee v. Interinsurance Exchange, supra*, 50 Cal.App.4th at p. 704.) Respondents claim it is nonsensical to suppose a subscriber, as insured, appoints the attorney-in-fact to issue a policy to herself. However, that is in legal effect what the statutes provide. The exchange's contracts are executed by the attorney-in-fact, which derives its authority from the powers of attorney executed by the subscribers. (§ 1305.)

Whether respondent's fiduciary obligations also extend to the adjustment of Tran's claim is yet to be determined. In *Delos, supra,* 93 Cal.App.3d 642, the court deemed Farmers Group a fiduciary for purposes of all the Exchange's insurance business, because it was convinced that the Group exercised all the functions of an insurer, including control over claims processing. (*Id.* at pp. 652-653, 655.) Here, respondents insist they have nothing to do with the claims functions of the exchanges. For purposes of the demurrer, Tran has sufficiently stated a cause of action for breach of fiduciary duty in regard to the execution of her policy. Respondents' fiduciary duty would extend to claims processing only if they assumed some responsibility for Tran's claim under the power of attorney executed by her.

Furthermore, because an attorney-in-fact's fiduciary obligations flow from its legal obligation under section 1305 to execute the insurance contract on behalf of the insured, and because the attorney-in-fact operates as the management of the exchange, we hold that its fiduciary duties can extend no further than the terms of the power of attorney and the contract of insurance. Thus, like the management of any other insurer, the attorney-in-fact is not subject to the strict principles of true fiduciary responsibility. (*Gibson v. Government Employees Ins. Co., supra,* 162 Cal.App.3d at pp. 449-450.) The fiduciary duties arising from its status as attorney-in-fact for the insured are analogous to the "special and heightened" duties imposed on an insurer due to the "unique nature of the insurance contract." (*Vu v. Prudential Property & Casualty Ins. Co., supra,* 26 Cal.4th at p. 1151.) The scope of an attorney-in-fact's fiduciary responsibilities depends in each case on the terms of the power of attorney and the nature of the functions performed by the attorney-in-fact on behalf of the insured.

We conclude that the facts stated by Tran in her complaint support a cause of action against respondents for breach of the fiduciary duty owed to the insured by the attorney-in-fact of a reciprocal insurer. The demurrer to the cause of action for breach of fiduciary duty must be overruled.

3. *The Summary Adjudication*

■ We review the trial court's summary adjudication ruling de novo, to determine whether the moving and opposing papers show a triable issue of material fact. (*Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.* (2001) 93 Cal.App.4th 531, 538 [113 Cal.Rptr.2d 300].) ■ Respondents claimed the undisputed facts established that Tran could not prove the elements of her four remaining causes of action for breach of the covenant of good faith and fair dealing, fraud, conspiracy to defraud, and intentional infliction of emotional distress. ■ A defendant making such a claim must either

present evidence conclusively negating an element of a cause of action, or provide affirmative evidence that the plaintiff lacks any factual support for her claims, such as an admission by the plaintiff that extensive discovery has yielded nothing. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

Respondents attempted to negate elements of Tran's causes of action by showing that they did not issue her an insurance contract, or have any involvement in the making of such a contract or the adjustment of her claim. Tran concedes she has no viable claim against Fire Insurance Exchange. However, she disputes respondents' factual showing as to Farmers Group and Truck Underwriters Association, noting that she provided testimony from employees of Farmers Group showing they were personally involved in the issuance of policies, including Tran's policy. She also claims that as attorneys-in-fact for the exchanges, these respondents are parties to the insurance policies at issue.

It is clear that under section 1305, the attorney-in-fact is "involved" as a matter of law in the execution of insurance contracts by a reciprocal insurer. The insurer can issue contracts only through the agency of the attorney-in-fact. Truck Underwriters Association has conceded its role as attorney-in-fact for Truck Insurance Exchange, and the deposition testimony of the various Farmers Group employees presented by Tran supports the statement in Farmers Group's SEC filing that it operated as attorney-in-fact for Farmers Insurance Exchange. Tran's evidence showed that employees of Farmers Group were indeed personally involved in the issuance of Tran's policy or policies. Thus, the only undisputed facts respondents managed to establish is that they did not issue insurance policies in their own name to Tran, and that Tran's claim was handled by exchange employees. This is insufficient to show Tran could not maintain her tort causes of action other than breach of the covenant of good faith and fair dealing. None of those causes of action depend on respondents' status as parties to the contract, and none are affected by respondents' role as agents of the exchanges.[6] (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 11:13, 12:818 to 12:819.)

A more difficult question is presented by Tran's claim against respondents for breach of the implied covenant of good faith and fair

---

[6]Respondents claim Tran abandoned her tort causes of action (other than breach of the covenant of good faith and fair dealing) by failing to make any argument supporting them in her opening brief. Tran responds that she challenged the adequacy of respondents' factual showing in support of their motion, which was sufficient to dispute the basis for the trial court's grant of summary adjudication. While Tran's briefing certainly leaves much to be desired, we agree that here, where the factual basis for respondent's motion was glaringly inadequate, it was sufficient for her to dispute that factual basis.

dealing. It is settled that this cause of action lies only against the insurer, and is based on the contractual relationship between insurer and insured. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 683-685 [95 Cal.Rptr.2d 583]; Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 12:45, 12:812.)

Tran contends respondents may be held liable for breach of the covenant of good faith and fair dealing under *Delos*, *supra*, 93 Cal.App.3d 642. The *Delos* court held that Farmers Group, as attorney-in-fact for Farmers Insurance Exchange, was subject to liability for breach of the covenant of good faith and fair dealing under a Farmers Insurance Exchange policy, even though the Group was not a party to the insurance contract. (*Id.* at pp. 650-652.) The *Delos* court distinguished *Gruenberg v. Aetna Ins. Co.*, on the ground that the agents and employees at issue in *Gruenberg* were " 'total strangers to the contracts of insurance.' " (*Delos*, *supra*, 93 Cal.App.3d at p. 651, quoting *Gruenberg v. Aetna Ins. Co.*, *supra*, 9 Cal.3d at p. 576.) Farmers Group, on the other hand, performed all management functions for Farmers Insurance Exchange. (*Delos*, *supra*, 93 Cal.App.3d at pp. 651-652.)

The *Delos* court stated: "If we were to accept the Group's argument and adhere to the general rule that 'bad faith' liability may be imposed only against a party to an insurance contract, we would not only permit the insurer to insulate itself from liability by the simple technique of forming a management company, but we would also deprive a plaintiff from redress against the party primarily responsible for damages. We conclude the Group is liable for the breach of the implied covenant of good faith and fair dealing. We are not persuaded to a different result by the Group's reference to Insurance Code sections 1303 and 1305, where a distinction for certain purposes is made between an insurer and attorney-in-fact. To the contrary, our consideration of the Insurance Code and its regulation of persons engaged in the insurance business (Ins. Code, § 790.01) and attorneys-in-fact (Ins. Code, § 1281) supports our conclusion. [Fn. omitted.]" (*Delos*, *supra*, 93 Cal.App.3d at pp. 652-653.) The court proceeded to find that the group could also be held liable on a statutory bad faith claim under section 790.03 and *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, 891 [153 Cal.Rptr. 842, 592 P.2d 329]. (*Delos*, *supra*, 93 Cal.App.3d at p. 653.)

The holding in *Delos* on extracontractual liability for breach of the covenant of good faith and fair dealing has received remarkably little attention in the published cases. One court has noted that since our Supreme Court withdrew *Royal Globe*'s endorsement of a private right of action under

section 790.03, "it is questionable if a basis for *Delos* still exists." (*Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1443 [88 Cal.Rptr.2d 881]; see *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 [250 Cal.Rptr. 116, 758 P.2d 58].) The *Filippo* court, however, was able to distinguish *Delos* on the ground that no interinsurance exchange was involved in *Filippo*. Although the insurer did have an attorney-in-fact who performed underwriting and management services, the *Filippo* court noted the attorney-in-fact was not the only entity from whom the insured could seek redress, and held that the attorney-in-fact was merely an agent who could not be held liable on its principal's contract. (*Filippo Industries, Inc. v. Sun Ins. Co., supra,* 74 Cal.App.4th at pp. 1442-1444.)

*Delos* is squarely on point in this case. We are not convinced by the *Filippo* court's reasoning on the doctrinal basis for the *Delos* holding. The *Delos* court did not rely on the private right of action under section 790.03 to support its ruling on liability for breach of the covenant of good faith and fair dealing. To the contrary, it discussed the plaintiff's cause of action under section 790.03 in a separate section of the opinion. (*Delos, supra,* 93 Cal.App.3d at p. 653.) Nevertheless, we do believe it is anomalous to hold a party responsible for breach of a contractual covenant when that party is not bound by the contract. The *Delos* holding was founded on the belief that it would be unjust to permit the party primarily responsible for a breach of the covenant of good faith and fair dealing to escape liability. We share that concern. However, as discussed in part 1, *ante,* and as recognized by the *Delos* court itself, the attorney-in-fact may be liable for breach of its fiduciary duty to the insured. (*Id.* at pp. 655-656.) Moreover, if the attorney-in-fact is such an integral part of the exchange's business that equity requires it to be liable on the contract, there is settled law permitting the insured to pursue a claim for breach of the covenant of good faith and fair dealing. But we conclude that the attorney-in-fact of a reciprocal insurer is not liable for breach of the covenant of good faith and fair dealing merely because of its status as the insurer's managerial agent. More is required for such an extension of liability.

An interinsurance exchange is not a corporation, but we see no reason why the distinction between the exchange and its attorney-in-fact may not be disregarded in cases meeting the requirements of the "alter ego" or "single enterprise" doctrine authorizing disregard of the corporate entity. (9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 12 et seq., p. 525 et seq.; *Las Palmas Associates v. Las Palmas Center Associates, supra,* 235 Cal.App.3d 1220, 1248-1250.) Tran did not brief this theory of liability, although her complaint and the proof she adduced in the summary adjudication proceedings abundantly tended to show the unitary nature of the

Farmers Group insurance business. We have exercised our discretion to address the issue, after obtaining supplemental briefing from the parties. (*Certain Underwriters at LLoyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94]; *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6 [67 Cal.Rptr.2d 726].) Respondents do not dispute the suitability of the "alter ego" or "single enterprise" doctrine in this context.

■ Two conditions are generally required for application of the doctrine to two related corporations: (1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone. (*Las Palmas Associates v. Las Palmas Center Associates*, *supra*, 235 Cal.App.3d 1220, 1249-1250; *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539 [99 Cal.Rptr.2d 824].) Whether these conditions have been satisfied is a question of fact. (*Las Palmas Associates v. Las Palmas Center Associates*, *supra*, 235 Cal.App.3d at p. 1248.) ■ Respondents make no claim that the unity of interest requirement is not met in this case.[7] They contend, however, no inequity would flow from restricting Tran to pursuing her claims against the exchanges, which are the actual insurers. They note there is no showing the exchanges have inadequate assets to meet any judgment Tran might recover, including punitive damages. (See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285-1286 [31 Cal.Rptr.2d 433].)

We think the equities at issue were well stated in *Las Palmas Associates v. Las Palmas Center Associates*, *supra*, 235 Cal.App.3d at page 1249: "Because society recognizes the benefits of allowing persons and organizations to limit their business risks . . . , sound public policy dictates that imposition of alter ego liability be approached with caution. [Citation.] Nevertheless, it would be unjust to permit those who control companies to treat them as a single or a unitary enterprise and then assert their . . . separateness in order to commit frauds and other misdeeds with impunity." Here, Tran presented evidence that Farmers Group would "sweep" a general account containing premiums collected by its agents, and determine which exchange would issue a policy. The guidelines governing issuance of policies were dictated by the home office of Farmers Group. Tran, who claims she never received a copy of her actual policy, found out through discovery that three different policies, one from Farmers Insurance Exchange and two from

[7]An interinsurance exchange is "owned" by the subscribers, not by the attorney-in-fact. However, given that the subscribers are required to appoint the attorney-in-fact as managerial agent, the "ownership" element of the alter ego doctrine is not applicable in this context.

Truck Insurance Exchange, had been generated for her *after* she suffered her loss. Farmers Group provided the analysts and underwriters who determined policy limits. The claims representatives used by the exchanges were so interchangeable that at least one of them, Jeffrey Abston, had trouble remembering which exchange he was representing when he dealt with Tran.

It may be that respondents can prove the handling of Tran's policy and claim was entirely innocent. But Tran has raised a triable issue as to whether it would be offensive to the interests of justice to allow respondents to shift all contractual liability to the exchanges. Respondents were managerial agents without whom the exchanges could not transact their business. Farmers Group, apparently acting through Truck Underwriters Association in some instances, made the critical decisions regarding Tran's policy for her and for the exchanges, manipulating the exchanges as parts of a single enterprise. When a reciprocal insurer functions as a mere instrumentality of an attorney-in-fact in the conduct of a unified insurance business, it would be inequitable to permit the attorney-in-fact to escape liability for breach of the covenant of good faith and fair dealing. (Cf. *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.* (1958) 166 Cal.App.2d 652, 658-659 [333 P.2d 802]; *Las Palmas Associates v. Las Palmas Center Associates, supra,* 235 Cal.App.3d at p. 1250.)

Thus, respondents failed to negate any element of Tran's cause of action for breach of the implied covenant of good faith and fair dealing simply by showing that they did not issue her a policy in their own name.

### DISPOSITION

The judgment is reversed as to Farmers Group and Truck Underwriters Association. The trial court is directed to enter orders overruling respondents' demurrer, and denying the motion by Farmers Group and Truck Underwriters Association for summary adjudication. Tran shall recover her costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

A petition for a rehearing was denied January 27, 2003, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied March 26, 2003.