**HAMILTON BEACH BRANDS, INC.,**
**a Delaware corporation**

v.

**METRIC AND INCH TOOLS, INC.,**
**a California corporation, et al.**

**Case No. CV 08–4678–AHM (RCx).**

United States District Court,
C.D. California.

May 7, 2009.

---

19. Captain Belluz testified at petitioner's preliminary hearing that he heard Patel say "Haraj Mavor." CT 157–59.

1082

Steven A. Browne, for plaintiff.

Robert A. Cohen, for defendant.

**PROCEEDINGS: ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT AGAINST DEFENDANT TURBO TEK INT'L, INC.**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

The hearing on plaintiff's application for right to attach order and writ of attachment against defendant Turbo Tek Int'l, Inc. ("TTI") was held on April 8, 2009, 614 F.Supp.2d 1056, 2009 WL 1357207 (C.D.Cal.2009), before Magistrate Judge Rosalyn M. Chapman. Steven A. Browne, attorney-at-law with the law firm Waller Lansden Dortch & Davis, appeared on behalf of plaintiff, and Robert A. Cohen, attorney-at-law with the law firm Anker, Reed, Hymes, Schreiber & Cohen, appeared on behalf of defendants.

■ On April 8, 2009, this Court issued an Order granting plaintiff's application for right to attach order and writ of attachment against defendant Metric and Inch Tools, Inc. ("MI Tools") and placed plaintiff's application for prejudgment attachment against defendant TTI under submission pending briefing on whether the application should be denied with or without prejudice. On April 21, 2009, plaintiff filed its legal memorandum, and on May 6, 2009, defendants filed their opposing memorandum. After considering these memoranda, the Court finds there is no need for plaintiff to file a reply memorandum, and concludes that a second or subsequent application for a prejudgment writ of attachment is permissible under California law. *See Film Packages, Inc. v. Brandywine Film Prod., Ltd.*, 193 Cal. App.3d 824, 829, 238 Cal.Rptr. 623 ("[W]e hold that [C.C.P.] section 484.100 does not preclude the court from entertaining a subsequent motion for a right to attach order, after a previous motion has been denied.") Thus, the Court grants plaintiff's request that the denial of its application for prejudgment attachment against defendant TTI be without prejudice, rather than with prejudice.

**DISCUSSION**

■ The plaintiff's application for an attachment order and writ of attachment against defendant TTI, which was not a signatory to the written agreements between it and defendant MI Tools, Defendants' Amended Opposition at 6:4–8:18; *see also* Declaration Of Hank Wood ("Wood Decl.") ¶¶ 5, 12, Exhs. 1–1A, rests on the doctrine of alter ego between the "sister companies" TTI and MI Tools. Plaintiff's Memorandum at 4:22–6:26, 10:4–12:11. Defendant TTI claims plaintiff has not shown "the probably validity" of its claim against it since it cannot show defendant TTI is the alter ego of defendant MI Tools. Defendant TTI is correct.

■ California law allows writs of attachment to issue against an entity or individual who is not a party to a contract if that entity or individual is the alter ego of the party whose property is subject to attachment. *See, e.g., Meizlisch v. San Francisco Wool Sorting & Scouring, Co.,*

213 Cal. 668, 670–71, 3 P.2d 310 (1931); *Paul v. Palm Springs Homes, Inc.*, 192 Cal.App.2d 858, 862–63, 13 Cal.Rptr. 860 (1961). "California law provides that the party seeking to have the corporate entity disregarded has the burden of proving that the alter ego theory should be applied." *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir.1978); *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App.4th 1205, 1212–13, 11 Cal.Rptr.2d 918 (1992).

■■■ "Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (2000); *Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1341, 90 Cal.Rptr.3d 589, 619 (2009). Nevertheless, "[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Sonora Diamond Corp.*, 83 Cal.App.4th at 539, 99 Cal.Rptr.2d 824; *Virtualmagic Asia, Inc. v. Fil–Cartoons, .Inc.*, 99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002).

■■■ "There is no litmus test to determine when the corporate veil will be pierced" under the alter ego doctrine; "rather the result will depend on the circumstances of each particular case." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 300, 216 Cal.Rptr. 443, 448, 702 P.2d 601 (1985); *Baize v. Eastridge Cos.*, 142 Cal.App.4th

293, 302, 47 Cal.Rptr.3d 763 (2006). "Under the single-enterprise rule, liability can be found between sister companies." *Las Palmas Assoc. v. Las Palmas Center Assoc.*, 235 Cal.App.3d 1220, 1249, 1 Cal. Rptr.2d 301 (1991); *Tran v. Farmers Group, Inc.*, 104 Cal.App.4th 1202, 1211, 128 Cal.Rptr.2d 728 (2002). "Two conditions are generally required for application of the doctrine to two related corporations: (1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone." *Tran*, 104 Cal.App.4th at 1219, 128 Cal.Rptr.2d 728; *Mesler*, 39 Cal.3d at 300, 216 Cal.Rptr. at 448, 702 P.2d 601. In determining the applicability of the alter ego doctrine, "courts consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *VirtualMagic Asia, Inc.*, 99 Cal.App.4th at 245, 121 Cal. Rptr.2d 1; *Sonora Diamond Corp.*, 83 Cal. App.4th at 538–39, 99 Cal.Rptr.2d 824. "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *VirtualMagic Asia, Inc.*, 99 Cal.App.4th at 245, 121 Cal.Rptr.2d 1; *Sonora Diamond Corp.*, 83 Cal.App.4th at 539, 99 Cal.Rptr.2d 824.

Here, the evidence shows: TTI was incorporated in California on March 25, 1985, and MI Tools was incorporated in

California on June 27, 1994 (Declaration of Fred Reinstein ("Reinstein Decl.") ¶¶ 2–3); TTI and MI Tools have the same office location and telephone number (Reinstein Decl. ¶ 5; Wood Decl. ¶ 17A, Exh. 7); TTI and MI Tools have similar shareholders and directors, and Fred Reinstein is the president of both corporations (Reinstein Decl. ¶¶ 1, 5; Wood Decl. ¶ 17B at 5:21–27); Mr. Reinstein was personally involved in the negotiations of the Amended Licensing Agreement and repeatedly communicated with plaintiff about MI Tools' performance under the written agreements (Wood Decl. ¶ 17B at 5:25–27, 17C at 6:4–9); TTI and MI Tools maintain separate bank accounts and separate books and records (Reinstein Decl. ¶ 5); TTI paid plaintiff royalties due under MI Tools' written agreements (Wood Decl. ¶ 17H); and TTI created a catalog and brochures to sell plaintiff's products, showing TTI as the vendor, and a "Use & Care Manual" listing TTI as warrantor.[1] (Wood Decl. ¶¶ 17E at 6:24–7:6, 17F, Exhs. 13–15). This evidence is insufficient to establish MI Tools and TTI are a single-entity or MI Tools is the alter ego of TTI. Indeed, plaintiff has submitted absolutely no competent evidence demonstrating that MI Tools is inadequately capitalized, TTI commingled its funds with MI Tools' funds, TTI has held itself out as liable for MI Tools' debts, and, most importantly, TTI's use of its corporate form was "to perpetuate a fraud [on plaintiff] ... or accomplish some other wrongful or inequitable purpose...." *Sonora Diamond Corp.*, 83 Cal.App.4th at 539, 99 Cal.Rptr.2d 824; *Mesler*, 39 Cal.3d at 300, 216 Cal.Rptr. at 448, 702 P.2d 601. Thus, plaintiff has not met its burden to show the probable validity of its claim against defendant TTI through the application of the alter ego doctrine, and plaintiff's application for a right to attach order and writ of attachment against TTI should be denied without prejudice.[2]

## ORDER

1. Plaintiff's application for right to attach order and writ of attachment against defendant Turbo Tek Int'l, Inc. **IS DENIED** without prejudice.

2. Defendants shall forthwith give notice of this ruling.

---

1. Other evidence plaintiff presented does not significantly add to this Court's assessment of alter ego status, and the Court will not discuss it.

2. This determination does not address whether plaintiff should be permitted to conduct discovery in this district to obtain evidence to support a subsequent motion for a right to attach order against defendant TTI.