Filed 6/16/23  Chang v. Farmers Insurance Company CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WILD CHANG et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　　　v.<br><br>FARMERS INSURANCE COMPANY, INC. et al.,<br><br>　　　Defendants and Respondents. | B321411<br><br>(Los Angeles County<br>Super. Ct. No. BC650876) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Teresa A. Beaudet, Judge.  Affirmed.

Wild Chang, in pro. per., Kenneth Lo, in pro. per., Wild Chang, Jr., in pro. per., for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher, Gregory B. Scher and H. Douglas Galt for Defendant and Respondent Farmers Insurance Company, Inc.

————————————

## INTRODUCTION

Plaintiffs Wild Chang and Kenneth Lo were insured under a policy issued by defendant Fire Insurance Exchange. Plaintiffs submitted a claim under the policy, which plaintiffs allege was handled in bad faith. Plaintiffs Chang, Lo, and Wild Chang, Jr. (Chang Jr.), sued Farmers Insurance Company, Inc. (Farmers), Fire Insurance Exchange, and agent Stacy Chern for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other related causes of action. The trial court sustained Farmers' demurrer to the third amended complaint without leave to amend and entered a judgment of dismissal in Farmers' favor. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

These consolidated actions arise out of an insurance claim that plaintiffs Chang and Lo submitted for losses caused by a house fire on December 16, 2014. On February 16, 2017, Chang and Lo filed their original complaint against Farmers, Fire Insurance Exchange, Stacy Chern Insurance Agency, and Stacy Chern.

On August 21, 2017, Chang and Lo filed a second amended complaint that substituted Farmers Insurance Group of Companies for Farmers. On January 26, 2018, plaintiffs voluntarily dismissed the action with prejudice as to Farmers Insurance Group of Companies.

On January 28, 2021, plaintiffs Chang, Lo, and Chang Jr. filed a second action against Farmers, Fire Insurance Exchange, Stacy Chern, and defense counsel Woolls Peer Dollinger & Scher

2

(Woolls Peer). The actions were consolidated and the operative third amended complaint was deemed filed on July 22, 2021.

In the third amended complaint, plaintiffs allege Farmers and Fire Insurance Exchange, acting in bad faith, made a grossly deficient settlement offer for the claim plaintiffs submitted for their fire loss. Plaintiffs also allege Farmers, Fire Insurance Exchange, and Chern engaged in a fraudulent scheme to "convert the 'insurance'" plaintiffs allegedly purchased from Farmers "into a mere 'self-owned membership' in an unincorporated association, i.e., [Fire Insurance Exchange] . . . in order to insulate [Farmers] and its agents from all of the legal liabilities arising from the deceptive and non-conforming insurance sold to [p]laintiffs."

The declarations page attached to the third amended complaint shows the policy was issued by Fire Insurance Exchange. Plaintiffs allege they never agreed to subscribe to Fire Insurance Exchange or to obtain coverage from that entity. Among other things, they never signed a subscription agreement. Instead, they understood they would be insured by Farmers. Plaintiffs attach a document entitled "Evidence of Property Insurance" that identified the "company" as "Farmers Insurance." Under the "coverage information" section, plaintiffs are directed to "remit payment to[] Farmers Insurance." Plaintiffs allege that this is a legally binding contract and that they relied on the fact Farmers Insurance is identified as the insurer in paying the premiums. Plaintiffs attach numerous documents bearing the logo of Farmers Insurance Group of Companies or using the term "Farmers" in connection with the insurance purchased by plaintiffs.

Plaintiffs allege that Farmers acted as the "principal/agent" of other defendants, including Fire Insurance Exchange, and that

3

Fire Insurance Exchange "act[ed] as a 'veil'" so that Farmers could limit its liability. The coverage plaintiffs purchased from Farmers was provided by Fire Insurance Exchange to "insulate [Farmers] and its agents from all the legal liabilities arising from the deceptive and non-conforming insurance sold to [p]laintiffs." Plaintiffs further allege Fire Insurance Exchange is "only responsible for the *administration* of 'membership' affairs for the members . . . [b]ut, in fact, [Farmers] is the real entity that has financial gains through staffing, managing and controlling the affairs of [Fire Insurance Exchange]." Plaintiffs also allege Stacy Chern acted as an agent of Farmers, not Fire Insurance Exchange.

Plaintiffs allege that, after the fire, defendants failed to properly investigate the damage caused by the fire, failed to provide temporary housing as required by the policy, and failed to provide adequate compensation for the claim. Plaintiffs also allege defendants threatened to terminate the policy at a time they knew plaintiffs could not obtain coverage elsewhere. Defendants took more than a year to complete their investigation and finally issued a check for the grossly deficient amount of $19,925.91, even though estimates for repairs exceeded $150,000. Plaintiffs allege the offer to pay $19,925.91 was made in bad faith. Plaintiffs rejected the offer, deciding instead to sue.

Plaintiffs also allege that stress from the experience caused Chang to suffer a stroke, the aftermath of which his minor son, Chang Jr., witnessed.

Plaintiffs purport to assert causes of action for fraud, breach of the covenant of good faith and fair dealing, breach of contract, unfair business practices, professional negligence, and

4

intentional and negligent infliction of emotional distress against all defendants.

Farmers (along with other defendants) demurred to the third amended complaint.[1] Farmers argued the claims for breach of contract, bad faith, and unfair competition failed as against Farmers because Farmers was not a party to the insurance contract; the claim for fraud failed because plaintiffs did not allege the elements of fraud with sufficient particularity and did not allege causation or damages; and the claims for negligence and negligent infliction of emotional distress failed because Farmers did not owe plaintiffs any duty and Chang Jr. could not recover as a bystander. Farmers requested that the court take judicial notice of, among other things, plaintiffs' motion for leave to file a third amended complaint and exhibits thereto; the company profile for Fire Insurance Exchange from the California Department of Insurance website; and the license status information for agent Stacy Chern from that website. The trial court granted the request for judicial notice.

In opposition to the demurrer as to Farmers, plaintiffs argued the claims for breach of contract, bad faith, professional negligence, intentional infliction of emotional distress, and unfair competition were sufficiently alleged because plaintiffs contracted with Farmers, as shown by the evidence of property insurance and other documents, and all defendants acted in concert with each other in bad faith to deprive plaintiffs of the benefits of the contract; the claim for fraud was sufficiently alleged because plaintiffs were told they were buying an

---

[1] Fire Insurance Exchange did not demur to the breach of contract or the breach of the covenant of good faith and fair dealing claims.

insurance policy from Farmers but received a subscription agreement from Fire Insurance Exchange; and the claim for negligent infliction of emotional distress was sufficiently alleged because Chang Jr. suffered emotional distress when he witnessed the aftermath of his father's stroke, which had been caused by Farmers' bad faith. Plaintiffs requested that the court take judicial notice of various court filings, including declarations that Fire Insurance Exchange had filed in support of an anti-SLAPP motion, and other documents purportedly related to the purchase of insurance. The court took judicial notice of the fact the declarations and certain other documents had been filed but declined to take judicial notice of the truth of the matters asserted therein. The court otherwise denied the request.

The court sustained Farmers' demurrer in its entirety and entered a judgment of dismissal as to Farmers. The court concluded the fraud claim failed because it had not been alleged with sufficient particularity; the claims for breach of contract, bad faith, intentional infliction of emotional distress, and unfair competition failed because Farmers was not a party to insurance contract; the professional negligence claim failed because Farmers owed no duty to plaintiffs; and the negligent infliction of emotional distress claim failed because Chang Jr. had not alleged the elements of a claim based on a bystander theory. The court denied leave to amend.

Farmers timely appealed.

# DISCUSSION

A. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. [Citation.] Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)

We assume the truth of the properly pleaded factual allegations and matters of which judicial notice has been taken. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*); see Code Civ. Proc., § 430.30, subd. (a).) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando,* at p. 1081.) "However, the assumption of truth does not apply to contentions, deductions, or conclusions of law and fact. [Citations.] Furthermore, any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity." (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102.) "'While the "allegations [of a complaint] must be accepted as true for purposes of demurrer," the "facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence."'"

7

(*Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131, 1145-1146; accord, *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726.)

We review the trial court's decision to deny leave to amend for an abuse of discretion. A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

B.    *The Trial Court Did Not Err in Sustaining Farmers' Demurrers*
      1.    *Breach of contract and breach of the implied covenant of good faith and fair dealing*

To establish a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 97-98.) "California law recognizes in every contract, including insurance policies, an implied covenant of good faith and fair dealing. [Citations.] In the insurance context the implied covenant requires the insurer to refrain from injuring its insured's right to

8

receive the benefits of the insurance agreement." (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1235.)

The trial court sustained Farmers' demurrers to the breach of contract and breach of implied covenant of good faith and fair dealing causes of action on the ground that Farmers was not a party to the insurance contract. The declaration page attached as an exhibit to the third amended complaint shows the coverage was provided by defendant Fire Insurance Exchange.

Fire Insurance Exchange is a reciprocal insurer, also known as an interinsurance exchange, governed by Insurance Code section 1280 et seq. (*Tran v. Farmers Group, Inc.* (2002) 104 Cal.App.4th 1202, 1210 (*Tran*).) "An interinsurance exchange is an unincorporated business organization made up of subscribers and managed by an attorney-in-fact. The exchange is the insurer and the subscribers are the insureds. The subscribers execute powers of attorney appointing the attorney-in-fact to act on their behalf. The attorney-in-fact executes the exchange's insurance contracts." (*Ibid.*; see Ins. Code, §§ 1303, 1305; *Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694, 702-704 [describing history of reciprocal insurance and structure of interinsurance exchanges]; *Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 651 (*Delos*) [discussing managerial role of attorney-in-fact].) "The written instrument, in which [the] contract of insurance is set forth, is the policy." (Ins. Code, § 380.)

Generally, causes of action for breach of contract and for breach of the implied covenant of good faith and fair dealing will lie only against the insurer. (*Gruenberg v. Aetna Insurance Co.* (1973) 9 Cal.3d 566, 576.) However, under certain circumstances, the attorney-in-fact for a reciprocal insurer may be held liable for

breach of the covenant of good faith and fair dealing. (*Tran, supra,* 104 Cal.App.4th at pp. 1218-1219; *Delos, supra,* 93 Cal.App.3d at p. 652.)

Courts have come to varying conclusions about when a reciprocal insurer's attorney-in-fact can be held liable for bad faith. In *Delos, supra,* 93 Cal.App.3d at p. 652, the court held that the attorney-in-fact of a reciprocal insurer could be held liable for bad faith regardless whether the attorney-in-fact was an alter ego of the exchange, concluding: "If we were to . . . adhere to the general rule that 'bad faith' liability may be imposed only against a party to an insurance contract, we would not only permit the insurer to insulate itself from liability by the simple technique of forming a management company, but we would also deprive a plaintiff from redress against the party primarily responsible for damages." (*Ibid.*)

By contrast, in *Tran, supra,* 104 Cal.App.4th at pp. 1218-1219, the court concluded "the attorney-in-fact of a reciprocal insurer is not liable for breach of the covenant of good faith and fair dealing merely because of its status as the insurer's managerial agent." The court held the attorney-in-fact could be held liable only where the plaintiff proves the attorney-in-fact is the alter ego of the reciprocal insurer or where the "single enterprise" doctrine applies. (*Id.* at p. 1218 [declining to follow *Delos, supra,* 93 Cal.App.3d at p. 652].)

"Two conditions are generally required for application of the doctrine to two related corporations: (1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of

10

one corporation alone." (*Tran, supra,* 104 Cal.App.4th at p. 1219.)

In *Tran,* the plaintiff sued the attorneys-in-fact for two reciprocal insurance exchanges for bad faith. The trial court granted summary judgment in favor of the attorneys-in-fact on the bad faith claims because they were not parties to the insurance contracts. The Court of Appeal reversed, concluding the plaintiff had raised a triable issue on the two alter ego elements quoted above.[2]

As to the first element, the court stated the defendants had made "no claim that the unity of interest requirement is not met in this case."[3] (*Tran, supra,* 104 Cal.App.4th at p. 1219.) As to the second, the court rejected the defendants' contention that "no inequity would flow from restricting Tran to pursuing her claims against the exchanges . . . [because] there [was] no showing the exchanges have inadequate assets to meet any judgment [the insured] might recover, including punitive damages." (*Ibid.*) The court concluded the mere fact the exchange was adequately capitalized was insufficient to negate the inequity element of an

---

[2]    One of the defendants in *Tran* and *Delos* was Farmers Group, Inc. The defendant here is Farmers Insurance Company, Inc., a different entity.

[3]    The court stated: "An interinsurance exchange is 'owned' by the subscribers, not by the attorney-in-fact. However, given that the subscribers are required to appoint the attorney-in-fact as managerial agent, the 'ownership' element of the alter ego doctrine is not applicable in this context." (*Tran, supra,* 104 Cal.App.4th at p. 1219, fn. 7; see also *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341-43 [attorney-in-fact can be held liable as an alter ego even though there is no shared ownership].)

11

alter ego claim in this context, holding: "When a reciprocal insurer functions as a mere instrumentality of an attorney-in-fact in the conduct of a unified insurance business, it would be inequitable to permit the attorney-in-fact to escape liability for breach of the covenant of good faith and fair dealing."[4] (*Id.* at p. 1220.)

We need not decide whether to follow *Delos* or *Tran* because exhibits attached to the third amended complaint show that Farmers is not Fire Insurance Exchange's attorney-in-fact. Although plaintiffs allege "[Farmers] is the real entity that has financial gains through staffing, managing and controlling the affairs of [Fire Insurance Exchange]," exhibits attached to the third amended complaint show that Fire Insurance Exchange's attorney-in-fact is Fire Underwriters Association. "'While the "allegations [of a complaint] must be accepted as true for purposes of demurrer," the "facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence."'" (*Moran v. Prime Healthcare Management, Inc., supra,* 3 Cal.App.5th at pp. 1145-1146.) We accept the representations in the exhibits that Fire Underwriters Association is the attorney-in-fact. Plaintiffs have not alleged any relationship between Farmers and Fire Underwriters Association to support a

_____

[4]    In concluding a triable issue had been raised, the court stated: "[Defendants] were managerial agents without whom the exchanges could not transact their business. Farmers Group, apparently acting through Truck Underwriters Association in some instances, made the critical decisions regarding Tran's policy for her and for the exchanges, manipulating the exchanges as parts of a single enterprise." (*Tran, supra,* 104 Cal.App.4th at p. 1220.)

12

conclusion that Farmers should be treated as Fire Insurance Exchange's attorney-in-fact.

Nor have plaintiffs sufficiently alleged that Farmers could otherwise be held liable as an alter ego of Fire Insurance Exchange on some basis other than as an attorney-in-fact. Plaintiffs have not sufficiently alleged a unity of interest between Farmers and Fire Insurance Exchange and have not sufficiently alleged facts showing the separate existence of the entities would sanction a fraud or promote injustice. The bare allegation that Farmers issued the policy through Fire Insurance Exchange "to insulate [Farmers] and its agents from all of the legal liabilities" is not sufficient to state a claim based on alter ego theory.

Plaintiffs argue they have adequately alleged they had a contract with Farmers because Farmers' agent provided them with a document entitled "Evidence of Property Insurance" that lists "Farmers Insurance" as the "company" and directs plaintiffs to remit their premium payment to "Farmers Insurance." Plaintiffs argue the document is a binder as defined in Insurance Code section 382.5.[5] (See *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 423 [document entitled "Evidence of Property Insurance" was a binder under section 382.5].)

A binder "temporarily obligates the insurer to provide" insurance coverage described in the binder "pending issuance of the insurance policy." (Ins. Code, § 382.5, subd. (a); accord, *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc., supra,*

---

[5] The evidence of property insurance does not qualify as a certificate of insurance under Insurance Code section 384, subdivision (a). The document does not contain the language required in that section to constitute a certificate of insurance.

188 Cal.App.4th at p. 423.) "[A] binder shall be valid for [a] period . . . not exceeding 90 days from the date of execution of the binder . . . No binder shall remain valid on or after the date the insurance policy is issued with respect to which the binder was given." (Ins. Code, § 382.5, subd. (c).)

Here, even if we were to assume the document was a binder, it would not provide coverage for the loss at issue here because the loss occurred more than 90 days after it was issued. The document was issued on April 29, 2014, with an effective date of May 5, 2014. Assuming it was a binder, it was valid for a maximum period of 90 days, until August 3, 2014, at the latest. (See Ins. Code, § 382.5, subd. (c).) The fire occurred on December 16, 2014.

Further, the insurance contract issued by Fire Insurance Exchange superseded the purported binder. Both the binder and declarations page attached to the third amended complaint list the same policy number, so it is clear both documents concern the same contract. The declarations page states: "This Declarations page is part of your policy. It supersedes and controls anything to the contrary." The declarations page makes clear the insurer is Fire Insurance Exchange and not "Farmers Insurance." Plaintiffs have no claim against Farmers for breach of contract or breach of the covenant of fair dealing based on the fact that "Farmers Insurance" is the "company" identified in the purported binder. [6]

---

[6] Farmers argues the policy was already in place at the time the document entitled "Evidence of Property Insurance" was issued, and therefore the document could not be a binder. In support of the argument, Farmers identified a declaration page attached to plaintiffs' motion for leave to amend reflecting a

In sum, the trial court properly sustained Farmers' demurrers to causes of action for breach of contract and breach of the covenant of good faith and fair dealing. Plaintiffs have not identified any additional facts they would allege against Farmers that would cure the deficiencies in the claims. The trial court thus did not abuse its discretion in denying leave to amend.

### 2.    *Fraud*

To state a cause of action for fraud, a plaintiff must plead the following elements: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.) "[F]raud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

Plaintiffs allege Farmers engaged in a fraudulent scheme to "convert the 'insurance' plaintiffs allegedly purchased from Farmers into a mere 'self-owned membership' in an unincorporated association, i.e., [Fire Insurance Exchange] . . . in order to insulate [Farmers] and its agents from all of the legal liabilities arising from the deceptive and non-conforming insurance sold to [p]laintiffs." Although the allegations are not entirely clear, plaintiffs appear to contend Farmers and its purported agent Stacy Chern represented plaintiffs would be insured by Farmers, but instead of an insurance policy issued by

policy period from January 30, 2014 to January 30, 2015. The document contains the notation, "Transaction type: Offer of renewal." The court cannot determine from the face of the document whether the declaration page reflects a consummated contract or an offer.

15

Farmers they received a subscription agreement with Fire Insurance Exchange.

This claim fails because, among other things, plaintiffs have not alleged the purported misrepresentations caused any damage.  The trial court took judicial notice of documents from the website of the Department of Insurance showing that Fire Insurance Exchange is duly authorized by the department to issue insurance contracts to California insureds.  The exhibits attached to the third amended complaint show that the coverage in the insurance contract issued by Fire Insurance Exchange matched the coverage set forth in the purported binder.  Plaintiffs do not allege that Fire Insurance Exchange would not be able to satisfy any judgment or that plaintiffs were otherwise damaged by being insured by Fire Insurance Exchange as opposed to any other entity affiliated with the Farmers Insurance Group of Companies.  Plaintiffs have not identified any additional facts they would allege to show the purported misrepresentations caused damage if leave to amend were granted.

Accordingly, the trial court did not err in sustaining Farmer's demurrer to this cause of action and did not abuse its discretion in denying leave to amend.

3.      *Unfair business practices*

The trial court also sustained the demurrer to plaintiffs' claims under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.)  Plaintiffs mention this claim only in passing in their appellate briefs and provide no argument or authority for why the trial court erred in sustaining the demurrer to this cause of action.  Plaintiffs have thus forfeited any

argument as to this claim. (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3.) In any event, the trial court correctly ruled that plaintiffs have not sufficiently alleged a UCL claim against Farmers.

Unfair competition under the UCL means "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." "Written in the disjunctive, Business and Professions Code section 17200 establishes '"three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."'" (*Ivanoff v. Bank of America, N.A., supra,* 9 Cal.App.5th at p. 730, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.) A plaintiff making a claim under the UCL must plead that the defendant engaged in a business practice that was either "unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." (*Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 206.)

A UCL claim against an insurer may be based on allegations of bad faith claims handling practices. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 383.) A plaintiff may also assert a UCL claim against the attorney-in-fact of a reciprocal insurance exchange when the unfair, unlawful, or fraudulent acts fell within the scope of the power of attorney. (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1337 ["because [Farmers Group, Inc.], as [Farmers Insurance Exchange's] managing agent, was directly involved in the drafting and execution of the class members' policies, it must at least share

17

with [Farmers Insurance Exchange] responsibility for the UCL unlawful business practice resulting from [Farmer Insurance Exchange's] violation" of a specified statute]; *R&B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327 [a reciprocal insurance exchange's attorney-in-fact can be held liable for unfair, unlawful or fraudulent acts under the UCL or for breach of fiduciary duty arising out of claims handling if the attorney-in-fact assumed responsibility for claims handling in the power of attorney].)

Plaintiffs allege that defendants, including Farmers, violated the UCL by (1) engaging in the fraudulent bait-and-switch and issuing a policy underwritten by Fire Insurance Exchange instead of Farmers Insurance; and (2) failing to adjust their claim promptly and in good faith. As to the UCL claim based on the alleged bait and switch, plaintiffs have not alleged they "suffered injury in fact" or "lost money or property as a result of the [alleged] unfair competition." (See Bus. & Prof. Code, § 17204 [setting forth standing requirements for a UCL claim].) Thus, plaintiffs lack standing as to this claim.

As to the UCL claim based on bad faith claims handling, the basis for plaintiffs' allegations that Farmers was involved in the claims handling process is unclear. As previously discussed, any allegation to the effect that Farmers was Fire Insurance Exchange's attorney-in-fact or managing agent is contradicted by the exhibits showing that Fire Underwriters Association is the attorney-in-fact.[7]

---

[7] Plaintiffs allege in a conclusory fashion that Farmers acted as Fire Insurance Exchange's agent, and state that Jeremy Gump "from Farmers Insurance" was involved in investigating the claim. Plaintiffs provide no argument or authority to support the

18

Plaintiffs have not identified any additional facts they could allege to save this claim. The trial court properly sustained the demurrer to the unfair business practices claim as to Farmers without leave to amend.

### 4. *Professional negligence*

To state a cause of action for professional negligence, a plaintiff must allege the following elements: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095, quotation marks omitted.)

"'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.'" (*Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137 (*Giacometti*), quoting *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) "Where there is no legal duty, the issue of professional negligence cannot be pled because with the absence of a breach of duty, an essential element of the cause of action for professional negligence is missing." (*Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1132.)

conclusion that a plaintiff may assert a claim for violation of the UCL against an agent of an insurer (other than an exchange's attorney-in-fact), and plaintiffs do not contend on appeal that they have stated a valid UCL claim because Farmers acted as an agent of Fire Insurance Exchange.

19

Here, plaintiffs have not adequately alleged that Farmers owed them any duty. While an attorney-in-fact of a reciprocal insurance exchange owes limited fiduciary duties to insureds (*Tran, supra,* 104 Cal.App.4th at pp. 1213-1215), again the exhibits attached to the third amended complaint show that Farmers is not the attorney-in-fact. Plaintiffs also appear to allege that Farmers acted as Fire Insurance Exchange's agent in investigating and otherwise responding to plaintiffs' claim, but Farmers owed no duty to plaintiffs in acting in that role. (See *Sanchez v. Lindsey Morden Claims Services, Inc., supra,* 72 Cal.App.4th at pp. 254-255 [agents of insurers involved in the claims handling process owe no duty to insureds and are not liable to insureds for economic loss].)

The trial court properly sustained the demurrer to this cause of action without leave to amend.

5. *Emotional distress*

Plaintiffs appear to base their claim for emotional distress on two different theories. First, they contend Farmers is liable for intentional infliction of emotional distress because it "failed to adjust and pay the full value of [p]laintiffs' claim." This claim fails because, as discussed, Farmers was not the insurer or the attorney-in-fact and owed no duty to plaintiffs with respect to the handling or payment of the claim.

Second, plaintiff Chang Jr.[8] appears to contend Farmers is liable for negligent infliction of emotional distress because Farmers' actions caused Chang to suffer a stroke, and Chang Jr. suffered emotional distress when he could not wake his father.

---

8      Chang Jr. is not an insured on the policy.

20

This theory fails for many reasons. Farmers cannot be held liable for any adverse effects flowing from alleged deficiencies in the claims handling process because it owed no duties to plaintiffs. Moreover, even if Farmers did have a duty to the policyholders and even if plaintiffs had adequately alleged Farmers' actions caused Chang to suffer a stroke, Chang Jr. would still not have a claim for negligent infliction of emotional distress. "[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668.) Here, the alleged "injury-producing event[s]" are Farmers' alleged actions with respect to the claims. Chang Jr. does not allege that he was present for those events or that Farmers' actions contemporaneously caused the stroke. Further, Chang Jr. does not allege that while he was witnessing any act by Farmers he simultaneously knew the acts were causing his father to have a stroke. Chang Jr. has no claim against Farmers based on a bystander theory.

The trial court properly sustained the demurrer to this claim without leave to amend.

21

## DISPOSITION

The judgment is affirmed.  Farmers shall recover its costs on appeal.


ESCALANTE, J.[*]

We concur:



SEGAL, Acting P. J.



FEUER, J.

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.